295 So.2d 242

**DEPARTMENT OF PUBLIC SAFETY for the State of Alabama, etc., et al.**

v.

**FREEMAN READY–MIX CO., a corp., etc., et al.**

**DEPARTMENT OF PUBLIC SAFETY for the State of Alabama, etc., et al.**

v.

**SOUTHERN HAULERS, INC., a corp., et al.**

**SC 626, SC 627.**

Supreme Court of Alabama.

May 2, 1974.

Rehearing Denied May 23, 1974.

William J. Baxley, Atty. Gen., Leon Ashford, Asst. Atty. Gen., James M. Tingle, Special Asst. Atty. Gen., George Beck, Deputy Atty. Gen., for appellants.

John W. Cooper and Charles H. Huey, Birmingham, for appellees.

BLOODWORTH, Justice.

These appeals stem from two separate bills of complaint filed by appellees against appellants, Department of Public Safety for the State of Alabama, E. C. Dothard as Director of the Department of Public Safety, and Ray Bass as Director of the Alabama Highway Department. The eight complainants in the first case are corporations in the business of manufacturing and delivering ready-mix concrete. The three complainants in the second case are in the business of transporting aggregate and commodities in bulk, in dump trucks and trailers. All the complainants sought an injunction against the enforcement of Title 36, § 89, Code of Alabama 1940, as last amended, [See Tit. 36, § 89, Recompiled Code 1958, 1971 Cumulative Pocket Part], a criminal statute which specifies maximum weights for vehicles traveling the highways of the State of Alabama (hereinafter referred to as the "truck weight statute").

The complaints, as last amended, allege in substance:

(1) that the truck weight statute has been repealed by Title 51, § 697, Code of Alabama 1940, as last amended, [See Tit. 51, § 697, Recompiled Code 1958, 1971 Cumulative Pocket Part], which licenses vehicles of weights in excess of those prescribed by the truck weight statute;

(2) that the arrest and conviction of complainants under the truck weight statute after complainants have been licensed by the State to transport those weights violates due process;

(3) that the conflicts between the truck weight statute and Title 51, § 697 renders said statute so ambiguous as to violate the fair notice requirement of the due process clause;

(4) that the failure of respondents to enforce the truck weight statute has repealed the statute through nonuse;

(5) that enforcement after a period of 30 years of nonenforcement deprives complainants of fair notice and warning required by due process;

(6) that nonenforcement of the truck weight statute has entrapped complainants;

(7) that enforcement after complainants have acquired equipment and entered into contracts in reliance on the nonenforcement of the truck weight statute deprives complainants of property without due process of law;

(8) that both the nonenforcement and the enforcement of the truck weight statute at the whim of the respondents amounts to legislation in violation of separation of powers;

(9) that since the last specification of weight laws in the truck weight statute, there have been changes in engineering, ecology, and in modes of doing business which render inapplicable the uses and purposes of the statute and, therefore, the statute is illegal and deprives the complainants of property without due process of law;

(10) that exemptions for certain types of trucks in the truck weight statute deprive complainants of equal protection of the laws.

Complainants further allege that enforcement of the statute will cause increased operating costs for complainants, increased use of the roads, increased use of fuel, and increased pollution such that complainants, the State, the Federal government, the industry served, and the public will be irreparably injured and without an adequate remedy at law, but that no one will be injured by the suspension and nonenforcement of said statute.

The two cases were consolidated for trial. The respondents (appellants here) filed a motion to dismiss on the grounds that the complaints failed to state causes of action, that the causes concern a criminal matter of which a court of equity has no jurisdiction, and that the causes are barred by the doctrine of sovereign immunity. The motion to dismiss was overruled. Issue was joined and evidence was taken ore tenus.

After hearing the consolidated cause, the court issued a final decree finding that there had been a sudden and strict enforcement of the truck weight laws, and that their "sudden and strict enforcement . . . is inequitable, unfair, and in their implementation through enforcement are being enforced in an unconstitutional manner." The court thereupon issued an injunction against the respondents, restraining and enjoining them from arresting or prosecuting any drivers of vehicles for violating Title 36, § 89, (except trucks which exceed certain weights specified in the court's decree). The injunction is to continue until the Legislature of the State of Alabama has an opportunity to meet and consider vehicle weight legislation, and in any event no longer than two years from the date of the court's decree.

Appellants-respondents present fifteen assignments of error on this appeal. In substance, these assignments charge that the court erred in overruling the motion to dismiss, that the court erred in that the final decree is contrary to law, and that the court erred because the final decree is not supported by the weight of the evidence.

Upon full consideration thereof, we are convinced that the trial judge's granting of the injunction prayed for by complainants is erroneous and contrary to the law of this State. We, therefore, reverse and remand this cause.

We now proceed to answer complainants' contentions ad seriatim.

1. In support of the trial court's final decree, complainants' first contention is that the truck weight statute has been re-

pealed by Title 51, § 697. Section 697 provides that "[f]or each truck or truck tractor using the public highways of this state, annual license taxes and registration fees, based on the gross vehicle weight in pounds, are hereby imposed and shall be charged." A graduated schedule of vehicle weights and the corresponding license taxes are set out in the statute, the heaviest category being 62,001 pounds or over. Section 697 goes on to state:

"  *    *    *

"(c) Every person making application for license under this section to use a truck or truck tractor on the public highways of this state shall be required to make an affidavit declaring the gross vehicle weight of such truck or truck tractor and file the said affidavit with the judge of probate, or other county licensing officer, in the county in which the said application is made. Upon payment of the applicable motor vehicle license tax or registration fee, the license to use the said truck or truck tractor on the public highways of this state shall be limited to the gross vehicle weight so declared by the owner, which shall be deemed to constitute the allowable gross vehicle weight for which the said vehicle is licensed.

    *    *    *"

Complainants argue that § 697 (quoted above in relevant part) and the truck weight statute [§ 89, Tit. 36] are in conflict and that § 697, as the later provision, impliedly repeals the truck weight statute.

■ We cannot agree. As this Court stated in City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162 (1909):

"Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. This is never the case

if there be a reasonable field of operation, by a just construction, for both: for then they will both be given effect. *    *    *"

See also State ex rel. Grace v. Smiley, 219 Ala. 119, 121 So. 398, 399 (1929).

Section 697 does not specifically authorize weights in excess of the limits set forth in the truck weight statute. It merely sets forth a graduated scale of weights even the highest category of which (62,001 pounds and over) is well within the maximum permissible weight of the truck weight statute. We think a licensee has the responsibility to determine the applicable state truck weight statute and to apply and license its trucks only for those weight categories for which each truck is eligible under all applicable truck weight laws. Surely, a truck owner cannot, simply by his own act of declaring an illegal weight on his application for license, thereby effect a repeal of the state truck weight statute.

Section 697 merely taxes, by means of a licensing system, trucks according to their declared weights. It cannot fairly be read to authorize weights which are otherwise illegal. Section 697 and the truck weight statute are not in conflict, as there is a reasonable field of operation for both. Therefore, there has been no implied repeal of the truck weight statute by enactment of § 697.

2. Complainants next argue that even if the truck weight statute has not been repealed by § 697, that the arrest and conviction of complainants under the truck weight statute, after complainants have obtained a license from the State to transport those weights, violates due process.

Even if we were to assume arguendo that § 697 licenses weights in excess of the legal limits, we cannot agree that complainants' due process rights have been violated. It is clear from the statement of intent in § 10 of Act No. 223 [1967 Acts of Alabama, Vol. 1, at p. 295] that § 697 is in

the nature of a tax on a certain activity for the purpose of raising revenue not a grant of a privilege. [See also same section quoted in annotation to Recompiled Code 1958, at Tit. 51, § 692, 1971 Cumulative Pocket Part.] Section 10 reads as follows:

"It is the intention of the Legislature by the enactment of this act to raise revenue and to appropriate funds to pay the principal of and interest on bonds that may be issued by the Alabama Highway Authority, a public corporation existing under the laws of this state, for the purpose of constructing highways and bridges, to raise revenue and appropriate funds for other highway and bridge purposes and to raise revenue and appropriate funds to provide a program for road and street purposes of the counties and muncipalities [sic] of this state."

The statute itself makes this clear as well [Tit. 51, § 697]:

"For each truck or truck tractor using the public highways of this state, annual license *taxes* and registration fees, based on the gross vehicle weight in pounds, are hereby imposed and shall be charged. \* \* \*" (Emphasis supplied.)

■ It has long been held that a state may constitutionally tax that which it prohibits. Casmus v. Lee, 236 Ala. 396, 183 So. 185 (1938). Cf. Lewis v. United States, 348 U.S. 419, 421, 75 S.Ct. 415, 99 L.Ed. 475 (1955). See also 84 C.J.S. Taxation § 4, at 45.

In *Casmus* this Court held that a statute authorizing a revenue stamp tax on punchboards was a valid and constitutional imposition of an occupation tax, even though the activity taxed was illegal.

In Barron v. Wilson, 278. Ala. 621, 179 So.2d 746 (1965), this Court stated the logical corollary to the rule of the *Casmus* case. *Barron*, like the case at bar, involved a suit in equity to enjoin the Chief of Police from interfering with, intimidating, or threatening to arrest complainant under a constitutional provision and a state statute (prohibiting certain uses of the public streets without first obtaining consent of municipal authorities) for conducting a funeral escort business for which the complainant had paid a fee and received an occupational license. The Court, speaking through Mr. Justice Harwood, soundly rejected the complainant's claim that a license for his funeral "escort service," issued by the city officials, constituted their consent to complainant's use of the city streets in contravention of the criminal statute:

"The doctrine to be deduced from Casmus v. Lee, supra, is that a business which is prohibited may be taxed.

"The business of operating a private enterprise upon the public streets of a municipality is unlawful unless the consent of the proper municipal authorities is first obtained. Section 220 of our Constitution, supra; Section 72, Title 10, supra.

"The mere obtaining of a business license cannot be deemed to legalize such business in the absence of the consent of the proper governing authorities of a municipality. Without such consent such operation is yet unlawful even though a business license is issued therefor."

Likewise, in Holloway v. Davis, 44 Ala. App. 346, 208 So.2d 794, cert. denied 282 Ala. 726, 208 So.2d 799 (1968), the then Court of Appeals held that the payment of an occupation or license tax levied upon collection agencies did not confer authority on the agencies to engage in those collection practices enumerated by a statute as constituting the practice of law, without meeting the additional qualifications therefor.

■ Therefore, we must conclude that the issuance of a license under § 697 does not bar the State from constitutionally prosecuting complainants under the truck weight statute.

3. Complainants' next contention is that the conflicts between the truck weight statute and § 697 renders the truck weight statute so ambiguous as to violate the fair notice requirement of the due process clause. In light of the foregoing principles, this contention requires little discussion. As we have heretofore noted, the truck weight statute and § 697 are not in conflict. First, § 697 does not specifically authorize licenses for weights in excess of the legal limits under the truck weight statute. And second, even if § 697 were to license excessive weights, § 697 is essentially in the nature of a tax, and a tax of an illegal activity does not in any manner legalize the taxed activity.

There being no conflict in the two statutes, we cannot see that any ambiguity arises when they are juxtaposed. The argument is without merit.

4. Complainants next argue that the failure of respondents to enforce the truck weight laws has repealed the statute through nonuse. Desuetude is a civil law doctrine rendering a statute abrogated solely by reason of its long and continued nonuse. This doctrine has never become an accepted part of the common law, and so this Court recognized in First National Bank v. Nelson, 105 Ala. 180, 196, 16 So. 707, 710 (1894), when it stated:

"* * * It is not to be denied, that if the meaning of words of a statute be uncertain, usage may be resorted to for the purpose of interpreting them (Lawson, Usages & Cust. 462, § 223; South. St.Const. § 308); but popular disregard of a statute, or a custom opposed to it, will not repeal it; and a custom or usage which would contradict the commands of a statute ought not to be considered. Lawson, Usages & Cust. § 216; South. St.Const. § 137; [Richmond & Danville] Railroad Co. v. Hissong [97 Ala. 187] 13 South. 209; Railroad Co. v. Johnston, 75 Ala. 596; Barlow v. Lambert, 28 Ala. 704."

Thus, we must reject the notion that mere nonenforcement of the truck weight statute over a period of time repeals that statute.

5. Complainants next contend that enforcement after a period of 30 years of alleged nonenforcement deprives the complainants of fair notice required by the due process clause. (We do not concede this to be the fact. To the contrary, it appears that strict enforcement took place in the early 1950's as well as enforcement to some extent for the past year and a half.) While mere nonenforcement cannot repeal a statute, it may well be relevant to the issue of adequate notice. Lack of notice, however, cannot properly support the injunction issued by the trial court in the instant case. Lack of notice, if a defense at all, can only avail those who have actually committed the proscribed act at a time in the past when enforcement of the truck weight statute could not fairly have been foreseen.

All complainants before the Court, by their own admission, have had adequate notice of the State's intention to enforce the truck weight laws in the future. This was the very purpose for seeking the injunction. Thus, we conclude that lack of notice cannot support the injunction. Thus, we conclude that lack of notice cannot support the injunction in the present case which enjoins, among other things, prosecutions for future violations of the truck weight statute.

6. Complainants next claim that enforcement of the statute constitutes unconstitutional "entrapment" by the State. Complainants argue that the State, through the license provided for in Title 51, § 697, granted complainants a privilege and that the State cannot now convict them for the exercise of that privilege. For this proposition complainants cite Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) and United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967).

These cases are clearly inapposite to the case at bar. In both cases, government agents had affirmatively indicated to those convicted that they had been granted a privilege to do the acts which resulted in their convictions. This is not the situation in the present case. As our foregoing discussion indicates, § 697 is a tax which imposes a burden on complainants; it does not privilege complainants to violate the criminal law with impunity.

Complainants cite the following portion of Title 51, § 697 as granting them a privilege to disregard the clear mandate of the truck weight statute:

"* * *

"(c) Every person making application for license under this section to use a truck or truck tractor on the public highways of this state shall be required to make an affidavit declaring the gross vehicle weight of such truck or truck tractor and file the said affidavit with the judge of probate, or other county licensing officer, in the county in which the said application is made. Upon payment of the applicable motor vehicle license tax or registration fee, the license to use the said truck or truck tractor on the public highways of this state shall be limited to the gross vehicle weight so declared by the owner, which shall be deemed to constitute the allowable gross vehicle weight for which the said vehicle is licensed.

* * *"

This portion of the statute merely declares that the allowable gross weight of each vehicle is "limited to" (i. e., may not be *greater than*) the weight declared by the owner in his application for the license tax. It cannot reasonably be interpreted as privileging complainants to carry weights in excess of those prescribed by the truck weight statute simply by virtue of the complainants' acts in declaring such weights on their applications.

Even that portion of Section 697 which complainants argue grants them a "privilege" explicitly describes the license as a "tax." As we have heretofore noted, payment of a tax on an activity does not grant a correlative privilege to engage in that activity if it is otherwise illegal. Since the State cannot reasonably have been considered to have extended a privilege to complainants to carry excess weights, there can be no "entrapment" upon their conviction for their violation of the truck weight laws. Complainants' "entrapment" argument must fail.

7. Complainants contend that enforcement of the truck weight statute after complainants have acquired equipment and entered into contracts in reliance on the nonenforcement of said statute deprives complainants of property without due process of law. This argument is untenable. Complainants cite us no cases which support this contention, nor do we find any. In an analogous area, this Court in State v. Maddox Tractor & Equipment Co., 260 Ala. 136, 69 So.2d 426 (1953) and Merriweather v. State, 252 Ala. 590, 42 So.2d 465 (1949), held that the state's failure to collect a sales tax over a period of years (because of an erroneous interpretation) did not vitiate the statute or estop the state from later enforcing the statute for that period even though the taxpayers had sold goods at a price which did not include the tax, in reliance on the state's nonenforcement of the statute against them. The taxpayers were held to have no vested right to rely on an erroneous interpretation of the statute. Likewise, in the case at bar, complainants acquired no vested right in the nonenforcement of a valid statute, the truck weight statute.

The United States Supreme Court has held that "contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the state." Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L. Ed. 1167 (1932).

Moreover, complainants cannot create such a property right merely by their own acts of knowingly entering into contracts which are profitable only if they violate the law. It is well established that enactment of a reasonable statute pursuant to the police power does not constitute a taking of property without due process of law simply because it necessarily results in a business being less prosperous as a result of the statute. California State Auto. Ass'n. Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951); Day-Brite Lighting v. State of Missouri, 342 U.S. 421, 72 S.Ct. 405, 96 L. Ed. 469, rehearing denied 343 U.S. 921, 72 S.Ct. 674, 96 L.Ed. 1334 (1952). This is all the more true where the hardship claimed results from acts of complainants themselves in knowingly entering into contracts whose profits are contingent upon the violation of a state statute.

Complainants' misplaced reliance on the nonenforcement of the truck weight statute does not deprive them of property without due process of law.

8. Complainants also contend that both the nonenforcement and the enforcement of the truck weight statute at the whim of the respondents amounts to usurpation of legislative functions by the executive in violation of separation of powers. Complainants cite us no case which supports this proposition. Nevertheless, we will briefly answer this contention. The executive branch of the government is charged with the enforcement of the laws as passed by the legislature—which includes the truck weight statute. This is precisely what respondents have sought to do. Whether or not the concept of separation of powers is contravened when the executive systematically fails to enforce a law, we need not decide. (In such a case a writ of mandamus might lie against an officer of the executive branch to compel enforcement of that law.) This is not the case before us. Respondents, in enforcing the truck weight statute, are carrying out that duty which they are charged by law and their office with performing. This cannot reasonably be considered "enacting legislation" in violation of separation of powers.

9. Complainants next argue that changes in truck design, road design, etc. have eliminated the purpose of the truck weight statute such that the statute can no longer be legally enforced. The precise argument of complainants in this regard is less than clear. However, it appears that complainants contend that, even if the statute was a reasonable exercise of the police power when enacted, changes in conditions over the years have made it arbitrary and unreasonable.

It is well settled that a state, in exercising its authority over its highways, may make regulations by the passage of statutes to "prevent the wear and hazards due to excessive size of vehicles and weight of load." Furthermore, "[l]imitations of size and weight are manifestly subjects within the broad range of legislative discretion." And in cases such as this, where "the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." Sproles v. Binford, 286 U.S. 374, 388, 389, 52 S.Ct. 581, 76 L.Ed. 1167 (1932). See also Morris v. Duby, 274 U.S. 135, 47 S.Ct. 548, 71 L.Ed. 966 (1927).

We are not convinced that the truck weight statute is arbitrary and unreasonable. Even the trial judge recognized the need for some limits upon the weight of trucks using Alabama's highways in order to prevent undue wear on the highways and protect the safety of those using the highways and promulgated such limits in furtherance of such need.[1] The

---

1. The final decree below enjoined the respondents from arresting drivers of vehicles exceeding the existing weight laws as prescribed by Tit. 36, § 89 unless the vehicles exceed the

principal point at issue seems to be what those limits are to be. From the conflicting testimony of the experts who testified at the trial of this cause, it appears clear that the issue is highly debatable and that reasonable men differ on this issue. In such a case it is essential that the courts defer to the legislature. Therefore, we cannot say that the truck weight statute is unconstitutional as an arbitrary and unreasonable exercise of police power.

10. The final contention of complainants is that the exemptions for certain types of trucks in the truck weight statute deprive complainants of equal protection of the laws. Other statutes do exempt, from the provisions of the truck weight statute, vehicles owned by the federal government, state, counties, cities and unincorporated towns; cotton trucks hauling 50 bales and husbandry machinery; trucks licensed by cities or unincorporated towns within their police jurisdictions; and vehicles transporting milk. Such exemptions, however, do not deprive complainants of equal protection of the laws. It is well established that, at least in the area of economic regulation, it is immaterial that a law regulates certain abuses, but does not touch what may be even greater abuses in a different category. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Railway Express Agency, Inc. v. New York, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

As the United States Supreme Court stated in Williamson v. Lee Optical Company, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955):

"* * * The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature may select one phase of one field and apply a remedy there, neglecting the others. A. F. of L. v. American Sash Co., 335 U.S. 538, 69 S. Ct. 258, 93 L.Ed. 222. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. * * *"

Nor can we say here that the exemptions created by the legislature invidiously discriminate against the complainants.

Thus, we conclude that none of the grounds offered by complainants nor those relied upon by the trial court can support the issuance of an injunction against the enforcement of the truck weight statute. To hold otherwise would result in this Court's ratifying the trial court's implementation by judicial fiat of a new truck weight statute (introduced but never passed by the legislature)—a clear usurpation of the legislative function.

Accordingly, the judgments of the trial court are reversed and remanded with instructions to the trial court to vacate the injunctions issued in these causes and dismiss the complaints.

Reversed and remanded with instructions.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.

weights prescribed by the "Court's Exhibit 'A' " being a bill to amend § 89 apparently introduced but never passed by the 1973 Legislature.