Y. D. LUMBER CO. *v.* REFUGE COTTON OIL CO. *et al.*[*]

(Division A. Feb. 11, 1929.)

[120 So. 447. No. 27616.]

*Corpus Juris-Cyc References: Mortgages, 41CJ, section 402, p. 483, n. 49; section 505, p. 554, n. 90.

*Butler & Snow,* for appellant.

*Montgomery & Montgomery,* for appellees.

*Butler & Snow,* for appellant, on questions propounded by the court.

*Montgomery & Montgomery,* for appellees, on questions propounded by the court.

Argued orally by *Geo. Butler,* for appellant, and *M. V. B. Montgomery,* for appellee.

SMITH, C. J. This is an appeal from a decree correcting the description of property embraced in a deed of trust executed by Cain to the Refuge Cotton Oil Company, and declaring the lien thereof to be superior to a materialmen's lien of the Y. D. Lumber Company on a portion of the property embraced in the deed of trust as corrected.

The case was submitted to the court below on bill, answer, and proof, and the essential facts, in substance, are as follows:

In May, 1926, and prior thereto, Cain owned and operated a public cotton gin, located on land owned by him and adjoining the right of way of the Yazoo & Mississippi Valley Railroad Company. This company executed to him a lease to a portion of its right of way adjoining the land on which the gin was located, with permission to erect a cotton seed house thereon. This seed house was erected by Cain and used by him in connection with his gin for storing cotton seed, which was transferred from the gin by means of a blow pipe. In May, 1926, Cain executed to the Buckeye Cotton Oil Company a deed of trust, on the gin and the land owned by him on which it was located, to secure the payment of two promissory notes executed by him to the Buckeye Cotton Oil Company. In June, 1927, the Refuge Cotton Oil Company paid the Buckeye Cotton Oil Company's

debt due by Cain and received an assignment of Cain's notes to it, secured by the deed of trust executed by Cain, and also received from Cain a deed of trust on the same property securing the notes assigned to it by the Buckeye Cotton Oil Company and an additional indebtedness due it by Cain. In July, 1927, Cain executed a trust deed to one Martak, for the use and benefit of the Refuge Cotton Oil Company, securing the indebtedness due by Cain to that company, including therein the property covered by the two deeds of trust which also remained in full force and effect. Afterwards, Martak executed a deed to the land owned by Cain and on which the gin was situated to Hutchins. In October, 1926, the seed house was destroyed by fire, and it was rebuilt by Cain with material purchased from the Y. D. Lumber Company, for which he did not pay. In August, 1927, this company sued Cain for the price of the material furnished him and used in the construction of the seed house, and obtained a judgment against him therefor, including a materialmen's lien on the house for the amount due it under the provisions of section 3058, Code of 1906; section 1, chapter 150, Laws of 1926; Hemingway's 1927 Code, section 2580.

The deed of trust from Cain to the Refuge Cotton Oil Company describes the land on which the gin is situated, but not that leased by him from the railroad company on which the seed house is situated, and then proceeds as follows: "Upon which said lot is situated the Bellewood gin, together with all buildings and machinery of every kind and description thereon situated. . . . It being our intention to convey and deliver to said trustee all ginning machinery and equipment of every kind and character whether the same be now located on the above-described lands, or to be located thereon; also all ginning machinery, tools and equipment of every kind or character which are now owned by us, or either of us, or which may be hereafter acquired by us, or either of us,

by purchase or otherwise, during the continuance of this trust, whether the same be located on the above-described lands, or any other land.''

The sale by the Y. D. Lumber Company to Cain of the materials with which the seed house was constructed was not evidenced by any writing, and the Refuge Cotton Oil Company had no notice thereof when it received its deed of trust from Cain. When the Y. D. Lumber Company instituted suit for the price of the materials against Cain and obtained its judgment therefor, no change had taken place in the possession and use of the property, both still being in Cain, and it had no notice of Cain's deed of trust to the Refuge Cotton Oil Company.

After the Y. D. Lumber Company had obtained its judgment against Cain, the Refuge Cotton Oil Company exhibited its original bill in the court below against Cain, the Yazoo & Mississippi Valley Railroad Company, the Y. D. Lumber Company, and others, alleging that its deed of trust and trust deed covered the seed house, and praying that it be decreed that ''the Refuge Cotton Oil Company is a subsequent encumbrancer of the seed house in question for a valuable consideration without notice or knowledge of the claims of the Y. D. Lumber Company; that the deeds from J. J. Cain to C. J. Martak, and from C. J. Martak to J. E. Hutchins, Jr., conveyed the said seed house, reforming the said deeds so as to expressly include the said seed house—if this be found necessary—and will hold that the said J. E. Hutchins, Jr., holds title to the said seed house free and clear of all claims of the Y. D. Lumber Company; that the judgment of the Justice Court in favor of the Y. D. Lumber Company . . . be held to constitute no lien upon the aforesaid seed house; and that all rights, equities and claims on the part of the defendants in this cause to the said seed house be annulled and cancelled as a cloud upon the complainant's title; that if the said seed house is located upon the right-of-way of the Yazoo and Missis-

sippi Valley Railroad Company, then that the said seed house be held to be the property of your complainants subject to such usual lease contracts as a railroad company customarily executes with reference to such property."

The decree of the court below corrects the description of the property conveyed by the deed of trust from Cain to the appellant so as to include the land leased by Cain from the Yazoo & Mississippi Valley Railroad Company on which the said seed house is located; and it is further ordered, "adjudged and decreed that the lien of the complainant, the Refuge Cotton Oil Company, upon the aforesaid property, including the seed house thereon, is expressly held to be prior and superior to that of the Y. D. Lumber Company, and that the rights of the Y. D Lumber Company, under its circuit court judgment are subordinate to the lien of the Refuge Cotton Oil Company upon the said property."

The appellee's contentions are:

(1) That the seed house is embraced in the description of the property conveyed by Cain in his deed of trust to the Buckeye Cotton Oil Company and the trust deed to Martak.

(2) That the seed house is embraced in the description of the property conveyed by Cain in his deed of trust to the appellant, but, if not, the court below committed no error in correcting the description of the property therein so as to include the seed house, and, as it had no notice of the Y. D. Lumber Company's claim to a lien on the seed house when the deed of trust was executed, the court committed no error in decreeing that the lien of the deed of trust on the seed house is superior to that of the Y. D. Lumber Company's judgment against Cain.

The court below did not deal in its decree, with the deed of trust from Cain to the Buckeye Cotton Oil Company and his trust deed to Martak, and therefore denies the appellee any relief predicated thereon. No cross-

appeal was taken, and no cross-assignment of error was filed by the appellee complaining thereof; consequently no question relative thereto is here presented.

The seed house is not covered by the description of the property conveyed by the deed of trust, unless embraced in the following language: "It being our intention to convey and deliver to said trustee all ginning machinery and equipment of every kind and character whether the same be now located on the above described lands, or to be located thereon." If the seed house is included in this description, it can only be because embraced in the words "equipment of every kind and character." We will assume, for the purpose of the argument only, that this description covers all equipment of every kind and character, whether located on the land described or not. The question then is, Is the seed house included therein? The word "equipment" means "whatever is used in equipping . . . the collective designation for the articles comprising an outfit." Webster's International Dictionary. In *Landau* v. *Sykes*, 98 Miss. 507, 54 So. 3, Ann. Cas. 1913B, 197, the word was held to include not only the machinery with which a manufacturing plant was necessarily equipped, but the office furniture used in connection with the operation thereof. It is usually applied to movable and not to immovable property. Every manufacturing and other industrial establishment must, of necessity, be located on real property, and generally within a building thereon, but such property is not usually considered a part of the equipment of the establishment, unless, possibly, the context in which the word is used necessarily implies that such is the case. Had this intrument conveyed only the gin, its machinery and equipment, it would undoubtedly have conveyed no interest in the real property on and in which the gin is situated, and the fact that it specifically conveyed a part of the real property would seem also to exclude the other real property from inclusion in the word "equipment."

Compare 20 C. J. 1301; 22 R. C. L. 902, and the authorities there cited; also *Standard Boiler Works* v. *National Surety Co.*, 71 Wash. 28, 127 P. 573, 43 L. R. A. (N. S.) 162; and *U. S., to Use of Thomas Laughlin* v. *Morgan* (C. C.), 111 F. 474.

Under section 3058, Code of 1906, as amended by section 1 of chapter 150, Laws of 1926 (Hemingway's 1927 Code, section 2580), the appellant's lien on the seed house for the price of the material furnished by it therefor did not "take effect as to purchasers or encumbrances for a valuable consideration without notice thereof" until the commencement of its suit against Cain for the enforcement of its lien thereon. Cain's deed of trust to the Refuge Cotton Oil Company was executed and recorded prior to the commencement of that suit, and, had the seed house been included in the property therein conveyed, it would have taken precedence of the appellant's lien thereon for the material furnished for its construction. Section 2784, Code of 1906; chapter 239, Laws of 1924; Hemingway's 1927 Code, section 2443. That the parties to that deed of trust may have intended to embrace the seed house therein is of no effect as against subsequent lien creditors, unless it contains a recital calculated to put a prudent person on notice thereof, and it contains no such recital. It is therefore of no efficacy as against the Y. D. Lumber Company, and cannot be corrected as against it, for the reason that it acquired its lien on the seed house without notice of the Refuge Cotton Oil Company's claim thereto. *Sack* v. *Gilmer Dry Goods Co.*, 149 Miss. 296, 115 So. 339; *Goodbar Co.* v. *Dunn*, 61 Miss. 619; *Nugent* v. *Priebatsch*, 61 Miss. 402; *Mississippi Valley Co.* v. *Railroad*, 58 Miss. 849.

The decree of the court below must be reversed in so far as it affects the Y. D. Lumber Company, but, as the other parties thereto have not appealed therefrom, the case will not be remanded, but the decree will be set aside and a decree will be rendered here in accordance with

the decree of the court below, except that the prayer of the bill that the lien of the appellant's deed of trust be decreed to be superior to that of the Y. D. Lumber Company will be denied.

*Reversed in part, and final judgment here.*